| | |
|---|---|
| JASNA BUKVIC-BHAYANI, DAHLIA INSTITUTE OF MAKEUP ARTISTRY LLC, and JULIE GOODALL,<br><br>     Plaintiffs,<br><br>vs.<br><br>BALDWIN RAY MITCHELL, JR., WYATT JONES, JR., KRISTA ROSE, ABBY SEATS, DIANE SMITH, and RENEE BYARS, in their official capacities as Members of the North Carolina Board of Cosmetic Art Examiners, and LYNDA ELLIOTT, in her official capacity as Executive Director of the North Carolina Board of Cosmetic Art Examiners.<br><br>     Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

This civil-rights lawsuit seeks to vindicate the right to speak about makeup without first being required to obtain government permission. Plaintiff Jasna Bukvic-Bhayani is an expert makeup artist who would like to open a school, the Dahlia Institute of Makeup Artistry, so that she can teach others, like Plaintiff Julie Goodall. But North Carolina's Board of Cosmetic Art Examiners (the "Board") stopped Plaintiff Bukvic-Bhayani from opening a makeup school without a Board-issued license.

Under North Carolina's Cosmetic Art Act, no school may teach makeup artistry without first obtaining a Board license, which involves agreeing to teach the state's 600-hour esthetics curriculum (most of which is unrelated to makeup artistry) and purchasing expensive esthetics equipment (most of which is also unrelated to makeup artistry). But teaching, including teaching

1

about makeup, is speech. Accordingly, North Carolina's content-based prohibition of unlicensed makeup instruction violates the First Amendment.

## JURISDICTION AND VENUE

1. Plaintiffs bring this lawsuit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of their rights under the First and Fourteenth Amendments of the United States Constitution; 42 U.S.C. § 1988; and the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202.

2. Plaintiffs seek injunctive and declaratory relief against enforcement of the North Carolina Cosmetic Art Act, N.C. Gen. Stat. §§ 88B-1 *et seq*., and regulations promulgated pursuant to that Act, 21 N.C. Admin. Code §§ 14A.0101 *et seq*., that violate Plaintiffs' First Amendment right to communicate about makeup artistry without first obtaining permission from the State of North Carolina.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Mecklenburg County, which is located in the Western District of North Carolina. *See* 28 U.S.C. § 113.

## PARTIES

5. Plaintiff Jasna Bukvic-Bhayani is an adult resident of Mecklenburg County, North Carolina. Ms. Bukvic-Bhayani is a professional makeup artist who has attempted opening a makeup school, but was barred by Defendants. Were it not for North Carolina's cosmetology statute and regulations, her makeup school would be open today.

2

6.      Plaintiff Dahlia Institute of Makeup Artistry LLC is a limited liability company organized in North Carolina, with its primary place of business in Mecklenburg County, North Carolina.  Were it not for North Carolina's cosmetology statute and regulations, the organization would, through its owner, Plaintiff Bukvic-Bhayani, teach makeup artistry to willing students in Mecklenburg County.

7.      Plaintiff Julie Goodall is an adult resident of Mecklenburg County, North Carolina.  Ms. Goodall currently enjoys performing makeup application as a hobby and, were it not for North Carolina's cosmetology statute and regulations, she would enroll at the Dahlia Institute of Makeup Artistry to hear Plaintiff Bukvic-Bhayani's lessons.

8.      Defendant Lynda Elliott is the Executive Director of the North Carolina Board of Cosmetic Art Examiners, the agency responsible for enforcing the North Carolina Cosmetic Art Act, and is sued in her official capacity.

9.      Defendants Baldwin Ray Mitchell, Jr., Wyatt Jones, Jr., Krista Rose, Abby Seats, Diane Smith, and Renee Byars are members of the North Carolina Board of Cosmetic Art Examiners and are sued in their official capacities.

## FACTUAL ALLEGATIONS

**Plaintiffs Bukvic-Bhayani Is An Expert Makeup Artist Who Wants to Teach Makeup Artistry At Her Own School**

10.      Plaintiff Bukvic-Bhayani's passion for makeup artistry spans decades.

11.      Makeup artistry includes the theory, technique, and application of makeup, and encompasses a broad range of skills and techniques.

12.      Makeup artistry does not include hair removal, facials, or skin care.

13.      Before moving to the United States as a war refugee in 1998, Plaintiff Bukvic-Bhayani studied makeup artistry at a school in Sarajevo, Bosnia.

3

14.     Since 2010, Plaintiff Bukvic-Bhayani has been licensed as an esthetician in North Carolina.  Accordingly, she is legally permitted to apply makeup for pay in the state.

15.     The only reason Plaintiff Bukvic-Bhayani obtained an esthetician license is because she was legally required to do so in order to perform makeup artistry for a living.

16.     In order to qualify for an esthetician license, Plaintiff Bukvic-Bhayani attended the Academy of Nail Technology and Esthetics and completed its state-mandated 600-hour esthetics curriculum.

17.     Upon information and belief, the 600-hour esthetics curriculum Plaintiff Bukvic-Bhayani completed at the Academy of Nail Technology and Esthetics incorporated fewer than 10 hours of instruction in applying makeup.

18.     Since 2012, Plaintiff Bukvic-Bhayani has practiced makeup artistry at her Charlotte business, Dream Lash Studio.

19.     Within the past two years, Plaintiff Bukvic-Bhayani has made two appearances on WJZY—a Charlotte-area station operated by Fox Television Stations, LLC—to teach viewers makeup-application techniques.

20.     In 2016, Plaintiff Bukvic-Bhayani decided to open a makeup school in order to communicate her knowledge about makeup for a fee.

21.     In order to open a makeup school, Plaintiff Bukvic-Bhayani established the Dahlia Institute of Makeup Artistry LLC.  The LLC is owned and operated by Plaintiff Bukvic-Bhayani alone.  If the LLC were allowed to operate her desired makeup school—the Dahlia Institute of Makeup Artistry—Plaintiff Bukvic-Bhayani would teach there.

4

22.     Plaintiff Bukvic-Bhayani intends for the Dahlia Institute of Makeup Artistry to exclusively teach makeup artistry rather than any other topic, such as giving facials, removing superfluous hair, and performing skin care.

23.     At the Dahlia Institute of Makeup Artistry, Plaintiff Bukvic-Bhayani intends to offer instruction in advanced color theory, different styles of makeup, different types of makeup, and different makeup-application techniques.

24.     Plaintiff Bukvic-Bhayani intends for the Dahlia Institute of Makeup Artistry to fill a gap in the education market.  Upon information and belief, schools currently operating in North Carolina—including schools licensed by the Board—teach very little about makeup application and do so at a beginner's level.

25.     Upon information and belief, no schools currently operating in North Carolina—including schools licensed by the Board—offer over 100 hours in makeup instruction.

26.     Plaintiff Bukvic-Bhayani would like to offer two different programs—a 200-hour curriculum and a 500-hour curriculum—at the Dahlia Institute of Makeup Artistry.  She would also offer specialized classes on topics like special-effects makeup.

27.     For students who are already-licensed estheticians and want to learn about makeup artistry at a higher level than that provided by other schools, Plaintiff Bukvic-Bhayani would like to provide an advanced program at the Dahlia Institute of Makeup Artistry.

28.     Plaintiff Bukvic-Bhayani would also like to teach hobbyists—unlicensed students who are interested in learning about makeup artistry, but not in practicing makeup artistry for pay or qualifying for North Carolina's Board-issued esthetician license—at the Dahlia Institute of Makeup Artistry.

5

29.     Through classes at the Dahlia Institute of Makeup Artistry, Plaintiff Bukvic-Bhayani would like to teach makeup artistry both through lecturing students and by providing practical demonstrations on how to apply makeup.  Through her lecture sessions and practical demonstrations, Plaintiff Bukvic-Bhayani plans to teach multiple students the same lessons simultaneously.

30.     In preparation for opening a makeup school, Plaintiff Bukvic-Bhayani has developed lesson plans, assembled makeup materials, and prepared written handouts that she would distribute with lectures.

31.     In fall 2016, Plaintiff Bukvic-Bhayani announced her plans to open a Charlotte makeup school over Facebook.

32.     Immediately after she announced plans to open a makeup school, six students told Plaintiff Bukvic-Bhayani that they were interested in enrolling at her school.

33.     Plaintiff Bukvic-Bhayani does not hold herself out as an esthetician instructor.

34.     Plaintiff Bukvic-Bhayani has never advertised the Dahlia Institute of Makeup Artistry as an esthetics school or purported to offer classes that would satisfy any of North Carolina's requirements for obtaining a Board-issued esthetician license.

35.     No prospective student could reasonably believe that courses offered at the Dahlia Institute of Makeup Artistry or by Plaintiff Bukvic-Bhayani would satisfy any of North Carolina's requirements for obtaining a Board-issued esthetician license.

36.     Plaintiff Dahlia Institute of Makeup Artistry LLC is a separate entity from Plaintiff Bukvic-Bhayani's other business, Dream Lash Studio (which is not a party to this lawsuit), and Plaintiff Bukvic-Bhayani wants to operate the Dahlia Institute of Makeup Artistry at a different address from where Dream Lash Studio is located.

**Plaintiff Goodall Wants to Learn Makeup Artistry From Plaintiff Bukvic-Bhayani At The Dahlia Institute of Makeup Artistry**

37.     Plaintiff Goodall is currently a part-time daycare teacher and part-time office manager at Dream Lash Studio.

38.     As a hobby, Plaintiff Goodall applies makeup to her family members, but never for pay or reward.

39.     Plaintiff Goodall has known Plaintiff Bukvic-Bhayani since 2011, and considers her to be an expert makeup artist.

40.     Plaintiff Goodall wants to enroll at the Dahlia Institute of Makeup Artistry in order to listen to Plaintiff Bukvic-Bhayani's makeup lessons and improve her makeup skills.

41.     If the Dahlia Institute of Makeup Artistry were allowed to open, Plaintiff Goodall would attend the school.  If it had been allowed to open already, then Plaintiff Goodall would already be attending it.

42.     Plaintiff Goodall does not want to apply makeup for pay.  Accordingly, she has no interest in qualifying for a Board-issued esthetician license or completing a 600-hour esthetics curriculum.

43.     Plaintiff Goodall wants to learn how to apply makeup better, but does not want to pay for lessons in any other topic taught by esthetics schools, such as giving facials, removing superfluous hair, and performing skin care.

44.     Upon information and belief, there are currently no schools in North Carolina— except schools required by the Board to provide a 600-hour esthetics curriculum—that teach lessons in applying makeup.

**North Carolina's Board of Cosmetic Art Examiners Stops Plaintiff Bukvic-Bhayani From Opening a Makeup School**

45.    On or about October 2016, the Chief of Enforcement for North Carolina's Board of Cosmetic Art Examiners—Connie Wilder—visited Plaintiff Bukvic-Bhayani at Dream Lash Studio.

46.    During the visit, Connie Wilder told Plaintiff Bukvic-Bhayani that the visit was in response to Plaintiff Bukvic-Bhayani's Facebook post discussing her plans to open a makeup school.

47.    During the visit, Connie Wilder told Plaintiff Bukvic-Bhayani that a North Carolina statute prohibited her from opening a makeup school without a Board-issued cosmetic-art-school license.

48.    During the visit, Connie Wilder told Plaintiff Bukvic-Bhayani that, in order to obtain a cosmetic-art-school license, her school was required to satisfy North Carolina regulations' curriculum and equipment requirements for esthetics schools.

49.    During the visit, Connie Wilder explained that these regulations were designed to ensure that students received all of the training necessary to obtain an esthetician license.

50.    Plaintiff Bukvic-Bhayani objected to Connie Wilder that she did not want to qualify students for North Carolina's Board-issued esthetician license.

51.    Nonetheless, Connie Wilder insisted that North Carolina's cosmetology statute and regulations require a cosmetic-art-school license for her school.

52.    On November 15, 2016, Plaintiff Bukvic-Bhayani emailed the Board and asked whether she could operate a makeup school.

53.     On November 16, 2016, the Board's Executive Director—Defendant Elliott—replied to Plaintiff Bukvic-Bhayani's email, explaining that she "cannot just teach makeup application."

54.     In subsequent emails, Plaintiff Bukvic-Bhayani reiterated that her school would not be for students seeking esthetician licenses and that she just wanted to teach makeup artistry. For instance, in one email to the Board's Enforcement Processor, Tanya Wortman, dated February 24, 2017, Plaintiff Bukvic-Bhayani asked: "Do I need my school to be licensed before I can teach makeup artistry to students who do not want to become licensed estheticians?"

55.     On March 3, 2017, Plaintiff Bukvic-Bhayani sent a follow-up email to the Board, and said: "I want to teach anyone who wants to learn about makeup artistry. This will not be for the students to get a license."  In that email, she asked: "Does my school need to be licensed before I can open it? Do you know? If I just open it will you leave me alone?"

56.     On April 14, 2017, Plaintiff Bukvic-Bhayani sent another email to the Board, again asking whether she could open her school if she was not trying to qualify students for the Board's esthetician license.

57.     On April 14, 2017, Defendant Elliott replied to Plaintiff Bukvic-Bhayani and said: "If you are providing education to anyone that does not hold a current license with this cosmetic art board you must obtain a school license and teach the full curriculum[.]"

58.     Plaintiff Bukvic-Bhayani does not want to teach the Board's curriculum qualifying students for esthetician licenses, since most of the curriculum is unrelated to makeup artistry.  Similarly, she does not want to purchase equipment required for schools qualifying students for esthetician licenses, since the equipment is also unrelated to makeup artistry. Accordingly, she is not seeking a Board cosmetic-art-school license.

9

59.     The 200-hour and 500-hour curricula at the Dahlia Institute of Makeup Artistry do not qualify as eight-hour, Board-approved, annual classes designed for "continuing education" under N.C. Gen. Stat § 88B-21(e), which is the only possible exception to the licensing requirement for makeup schools.

60.     As a result of her fall 2016 conversation with Connie Wilder, correspondence with Defendant Elliott and Tanya Wortman, North Carolina's Board of Cosmetic Art Act, and the Board's regulations, Plaintiff Bukvic-Bhayani did not open the Dahlia Institute of Makeup Artistry for students.  If not for these actions by agents of North Carolina's government and the statutes and regulations challenged by this lawsuit, the Dahlia Institute would already be open.

**North Carolina Requires That Makeup Schools Obtain a License From the Board Before Speaking**

61.     The Board's employees have consistently told Plaintiff Bukvic-Bhayani that she must obtain a cosmetic-art-school license in order to open her makeup school, even if she does not seek to qualify students for licensure as estheticians.

62.     Indeed, North Carolina's cosmetology statute and regulations do require makeup schools, even those that do not seek to qualify students for licensure as estheticians, to obtain a cosmetic-art-school license before operating.

63.     The Board's requirements for Plaintiff Bukvic-Bhayani and the Dahlia Institute of Makeup Artistry are not discretionary.  North Carolina's cosmetology statute and regulations prohibit unlicensed makeup schools.

64.     North Carolina regulates makeup schools through the North Carolina Cosmetic Art Act, N.C. Gen. Stat. §§ 88B-1 *et seq*., and regulations promulgated pursuant to the Act, 21 N.C. Admin. Code §§ 14A.0101 *et seq*.

65.     The Act expressly prohibits the Board from granting a license to a cosmetic art school unless the school is in compliance with the relevant statutes and regulations.  N.C. Gen. Stat. § 88B-16(b).

66.     Under the Act, "[n]o one may open or operate a cosmetic art school before the Board has approved a license for the school."  N.C. Gen. Stat. § 88B-16(b).

67.     A "cosmetic art school" is defined as "[a]ny building or part thereof where cosmetic art is taught."  N.C. Gen. Stat. § 88B-2(6).

68.     "Cosmetic art" is defined as "[a]ll or any part or combination of cosmetology, esthetics, natural hair care, or manicuring, including the systematic manipulation with the hands or mechanical apparatus of the scalp, face, neck, shoulders, hands, and feet."  N.C. Gen. Stat. § 88B-2(5).

69.     "Esthetics" includes "applying makeup."  N.C. Gen. Stat. § 88B-2(11a).  Esthetics also includes numerous unrelated services—giving facials; performing skin care; removing superfluous hair from the body of a person by use of creams, tweezers, or waxing; applying eyelashes to a person, including the application of eyelash extensions, brow or lash color; beautifying the face, neck, arms, or upper part of the human body by use of cosmetic preparations, antiseptics, tonics, lotions, or creams; surface manipulation in relation to skin care; and cleaning or stimulating the face, neck, ears, arms, hands, bust, torso, legs, or feet of a person by means of hands, devices, apparatus, or appliances along with the use of cosmetic preparations, antiseptics, tonics, lotions, or creams.  *Id*.

70.     Reading the Act as a whole, no one may open or operate a building or part thereof where applying makeup is taught unless the Board has already approved a license for the school,

and the Board may not approve the license unless the statutory and regulatory requirements for a cosmetic art school have been met.

**To Obtain a Board License, A Prospective School Must Satisfy the Regulations' Burdensome Curriculum and Equipment Requirements**

71. Under the Cosmetic Art Act, "[t]he Board shall not issue a license before a cosmetic art school has been inspected and determined to be in compliance with the provisions of [the Act] and the Board's rules." N.C. Gen. Stat. § 88B-16(b).

72. In order to obtain a cosmetic-art-school license, a prospective school must first submit an application to the Board. Specifically, North Carolina's regulations require anyone "desiring to operate a cosmetic art school in the state of North Carolina" to "make application for licensure by submitting to the Board the Board's School Application." 21 N.C. Admin. Code § 14T.0102(a).

73. The Board's School Application requires supporting documents, including— among other things—a "[d]iagram with location of equipment placement," 21 N.C. Admin. Code § 14T.0102(b)(2), and a course curriculum for each cosmetic art discipline to be taught in the school. *Id*. § 14T.0102(b)(3); *see also id*. § 14T.0601(a).

74. The Board's School Application provides that a failure to supply mandatory attachments—including a diagram with location of equipment placement and a course curriculum for each cosmetic art discipline to be taught—will result in denial of the application.

75. The Board cannot approve a School Application "until all plans, furniture, supplies and equipment as prescribed by the [Board's] rules have been installed." 21 N.C. Admin. Code § 14T.0102(c).

76. Even after obtaining a cosmetic-art-school license from the Board, "[s]chools are subject to reevaluation and re-inspection at any time." 21 N.C. Admin. Code § 14T.0803(b). In

12

fact, North Carolina's regulations require that a school continue to adhere to North Carolina's mandatory curriculum, and develop lessons from that curriculum, after obtaining Board approval for licensure.  21 N.C. Admin. Code § 14T.0601(a).

77.     North Carolina's regulations have different equipment and curriculum requirements for four different types of cosmetic-art-schools: (1) cosmetology schools; (2) manicuring schools; (3) natural hair schools; and (4) esthetics schools.  21 N.C. Admin. Code § 14T.0201.

78.     To become licensed to teach makeup, prospective makeup schools must satisfy North Carolina's equipment and curriculum requirements for esthetics schools because applying makeup is, under the North Carolina Cosmetic Art Act, a form of esthetics.  N.C. Gen. Stat. § 88B-2(11a).

**The Vast Majority of the Board's Esthetics Curriculum Is Unrelated to Makeup Artistry**

79.     In order to comply with North Carolina's regulations, an esthetics curriculum must consist of at least 600 hours of instruction in theory and practical performances.  21 N.C. Admin. Code § 14T.0604(a).

80.     In order to comply with North Carolina's regulations, an esthetics curriculum must include instruction in: (1) anatomy or physiology; (2) hygiene; (3) disinfection; (4) first aid; (5) chemistry; (6) draping; (7) facial or body treatment (cleansing, manipulations, masks); (8) hair removal; (9) basic dermatology; (10) skin care machines, electricity, and apparatus; (11) aromatherapy; (12) nutrition; (13) make-up or color theory; and (14) style and techniques of esthetics services, including facials, makeup application, performing skin care, hair removal, eyelash extensions, applying brow and lash color, business management, and professional ethics. 21 N.C. Admin. Code § 14T.0604(a).

13

81. In order to comply with North Carolina's regulations, an esthetics curriculum must include practical instruction in the following styles and techniques: facials manual (skin analysis, cleansing, surface manipulations, packs, and masks), facials electronic (the use of electrical modalitus, including dermal lights, and electrical apparatus for facials and skin care including galvanic and faradic), eyebrow arching, hair removal (hard wax, soft wax, and depilatories), makeup application (skin analysis, complete and corrective makeup), eyelash extensions, and brow and lash color. 21 N.C. Admin. Code § 14T.0604(b).

82. The mandatory esthetics curriculum also requires "performances," defined as "the systematic completion of the steps for safe and effective cosmetic art services to a client," for each of these subjects. 21 N.C. Admin. Code § 14T.0604(b).

83. The mandatory esthetics curriculum requires 40 performances for facials manual, 30 performances for facials electronic, 20 performances for eyebrow arching, 30 performances for hair removal, 30 performances for makeup application, 10 performances for eyelash extensions, and 10 performances for brow and lash color. 21 N.C. Admin. Code § 14T.0604(b). In other words, of the 170 performances required for the mandatory esthetics curriculum, there are only 30 makeup-application performances.

84. Upon information and belief, teaching North Carolina's full esthetics curriculum over 600 hours would entail teaching at least 500 hours of material that does not concern makeup artistry.

85. The vast majority of North Carolina's mandatory esthetics curriculum is irrelevant to makeup artistry. Consequently, Plaintiff Bukvic-Bhayani is unwilling to teach the mandatory esthetics curriculum.

**The Equipment Mandated for Esthetics Schools is Unnecessary for Teaching Makeup Artistry**

86. North Carolina's regulations require that esthetics schools be equipped with the following equipment: (1) ten stations, which each must include a facial treatment chair (or treatment table) and stool; (2) a waste container at each station; (3) a facial vaporizer; (4) a galvanic current apparatus; (5) an infra-red lamp; (6) a woods lamp; (7) a magnifying lamp; (8) a hair removal wax system; (9) a thermal wax system; (10) a suction machine; (11) an exfoliation machine with brushes; and (12) a hand washing sink. 21 N.C. Admin. Code § 14T.0303(b).

87. Upon information and belief, North Carolina's equipment requirements for esthetics school are in place to facilitate instruction of esthetics skills that do not involve makeup application, such as giving facials, removing superfluous hair, and performing other skin care.

88. Upon information and belief, purchasing all the equipment that is mandatory for licensed esthetics schools would cost $20,000.

89. A facial treatment station, a facial vaporizer, galvanic current apparatus, an infra-red lamp, a woods lamp, a magnifying lamp, a hair removal wax system, a thermal wax system, a suction machine, and an exfoliation machine are each unnecessary for teaching makeup artistry. Accordingly, Plaintiff Bukvic-Bhayani refuses to purchase or install any of them at the Dahlia Institute of Makeup Artistry.

**North Carolina's Cosmetic Art Act and Related Regulations Threaten Speakers with Criminal and Civil Penalties**

90. The Board has statutory authority to administer and interpret the North Carolina Cosmetic Art Act, promulgate regulations to carry out the Act's provisions, examine and determine the qualifications and fitness of applicants for licensure under the Act, issue or deny licenses, investigate potential violations of the statute and regulations, approve new cosmetic art

15

schools, adopt rules—including physical requirements and mandatory curricula—for cosmetic art schools, inspect cosmetic art schools, establish a schedule of civil penalties for violation of the Act, and assess civil penalties. N.C. Gen. Stat. §§ 88B-4(a)(1), 88B-4(a)(2), 88B-4(a)(3), 88B-4(a)(4), 88B-4(a)(5), 88B-4(a)(7), 88B-4(a)(7a), 88B-4(a)(8), 88B-4(a)(9), 88B-4(a)(10), 88B-4(b), 88B-27, 88B-29(a), 88B-29(c).

91.    "A violation of" the Act is a Class 3 misdemeanor. N.C. Gen. Stat. § 88B-22(f).

92.    Unlicensed makeup instruction subject to numerous types of civil penalties:

a.    The "presumptive civil penalty for practicing cosmetic art teaching without a license" is $250 for a first offense, $350 for a second offense, and $500 for a third offense. 21 N.C. Admin. Code § 14P.0106(c).

b.    The "presumptive civil penalty" for a school "allowing . . . instruction of cosmetic art without displaying a current license" is $50 for a first offense, $100 for a second offense, and $200 for a third offense. *Id*. § 14P.0107(c).

c.    The "presumptive civil penalty" for failing to satisfy the Board's equipment requirements for cosmetic art schools is $200 for a first offense, $350 for a second offense, and $500 for a third offense. *Id*. § 14P.0111(a).

d.    And the "presumptive civil penalty for allowing an unlicensed individual to instruct cosmetic art" is $500 for a first offense, $750 for a second offense, and $1,000 for a third offense. *Id*. § 14P.0113(m) .

**Injury to Plaintiffs**

93.    Requiring Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC to meet all of the regulatory requirements for a licensed cosmetic art school in order to open a

makeup school to Plaintiff Goodall, and other students, violates Plaintiffs' rights under the First Amendment.

94.     In order to obtain the cosmetic-art-school license required to teach makeup artistry to Plaintiff Goodall, and other students, Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC would have to agree to teach North Carolina's mandatory 600-hour esthetics curriculum and purchase thousands of dollars in equipment.  These burdens are imposed on Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC solely because of the content of their speech.  Requiring Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC to bear these burdens in order to teach makeup artistry to Plaintiff Goodall, and other students, violates their rights under the First Amendment.

95.     Plaintiffs Bukvic-Bhayani does not want to teach North Carolina's mandatory 600-hour esthetics curriculum or purchase any of the equipment required for esthetics schools, nor does she want to choose between completing North Carolina's onerous requirements and committing a crime.

96.     Plaintiff Bukvic-Bhayani would currently be teaching makeup lessons at the Dahlia Institute of Makeup Artistry if she and her prospective school were not subject to North Carolina's Cosmetic Art Act and the related regulations.

97.     If Plaintiffs enjoin Defendants from enforcing the North Carolina Cosmetic Art Act and related regulations against them, Plaintiff Bukvic-Bhayani would teach makeup lessons at the Dahlia Institute of Makeup Artistry.

98.     If Defendants were to ever permit Plaintiff Bukvic-Bhayani to teach continuing-education classes satisfying estheticians' 8-hour per-year requirement under N.C. Gen. Stat § 88B-21(e) without a cosmetic-art-school license, but nothing else, she would not open the

17

Dahlia Institute of Makeup Artistry to do so. Plaintiff Bukvic-Bhayani wants to offer (and teach) 200-hour and 500-hour curricula—open to non-licensed students—at the Dahlia Institute of Makeup Artistry.

99.    Plaintiff Goodall would enroll at the Dahlia Institute of Makeup Artistry to hear Plaintiff Bukvic-Bhayani's makeup lessons if Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC were not subject to North Carolina's Cosmetic Art Act and the related regulations.

100.    Plaintiff Goodall does not want to enroll at any existing esthetics schools.

101.    If Plaintiffs enjoin Defendants from enforcing the North Carolina Cosmetic Art Act and related regulations against them, Plaintiff Goodall would listen to makeup lessons at the Dahlia Institute of Makeup Artistry. Moreover, if the Dahlia Institute were allowed to teach Plaintiff Goodall makeup, Plaintiff Bukvic-Bhayani would gladly offer her individualized instruction.

102.    North Carolina's prior restraint on speech by Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC has deprived—and continues to deprive—Plaintiff Goodall of useful information.

103.    The North Carolina Cosmetic Art Act and the Board's regulations threaten Plaintiffs Bukvic-Bhayani with criminal and civil penalties if she opens the Dahlia Institute of Makeup Artistry to students without a cosmetic-art-school license.

104.    The North Carolina Cosmetic Art Act and the Board's regulations threaten Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC with criminal and civil penalties if they teach Plaintiff Goodall makeup application without a cosmetic-art-school license.

105.    Plaintiff Bukvic-Bhayani is concerned and afraid that teaching makeup at the Dahlia Institute of Makeup Artistry without a cosmetic-art-school license will subject her to criminal and civil penalties.

106.    Defendants' actions have created a doubt that requires a resolution by this Court regarding Plaintiffs' right to communicate.  Without a declaration regarding the constitutionality of North Carolina's requirement that Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC obtain a cosmetic-art-school license before teaching Plaintiff Goodall and other students, Plaintiffs are concerned that communicating about makeup artistry at the Dahlia Institute of Makeup Artistry would be illegal, even though such enforcement would violate the First Amendment to the United States Constitution.

107.    If this Court declared that North Carolina's requirement that Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC obtain a cosmetic-art-school license before teaching Plaintiff Goodall and other students was unconstitutional, the declaration would clarify Plaintiffs' rights and conclusively determine whether they could communicate without a license.

**Lack of Foundation for North Carolina's Requirements**

108.    Any government interests purportedly advanced by North Carolina's requirement that makeup schools obtain a cosmetic-art-school license—conditioned on satisfying North Carolina's curriculum and equipment requirements for esthetics schools—could be advanced equally effectively by any number of less-restrictive alternatives.

109.    Upon information and belief, North Carolina has no evidence that requiring makeup schools to obtain a cosmetic-art-school license advances any legitimate government interest.

19

110.    Upon information and belief, North Carolina has no evidence of harms that would arise if its requirement that makeup schools obtain a cosmetic-art-school license was removed.

111.    Upon information and belief, North Carolina has no evidence that requiring makeup schools to teach a 600-hour esthetics curriculum advances any legitimate government interest.

112.    Upon information and belief, North Carolina has no evidence of harms that would arise if its requirement that makeup schools teach a 600-hour esthetics curriculum was removed.

113.    Upon information and belief, North Carolina has no evidence that requiring makeup schools to purchase equipment required for esthetics schools advances any legitimate government interest.

114.    Upon information and belief, North Carolina has no evidence of harms that would arise if its requirement that makeup schools purchase equipment required for esthetics schools were removed.

115.    If Defendants were enjoined from enforcing the North Carolina Cosmetic Art Act, and accompanying regulations, against Plaintiffs, they stand to suffer no harm—there is no risk of financial harm to them because an injunction would not compel them to take any action or obligate any resources.

## CONSTITUTIONAL VIOLATIONS

### Count One:  Freedom of Speech

116.    All preceding allegations are incorporated here as if set forth in full.

117.    The First Amendment to the United States Constitution, incorporated as against North Carolina via the Fourteenth Amendment, protects Plaintiffs' right to communicate about makeup artistry.

118.    Teaching is speech and is protected by the First Amendment.

119.    North Carolina's Cosmetic Art Act forbids makeup schools from teaching unless they obtain an onerous government cosmetic-art-school license.

120.    North Carolina's regulations condition makeup-school licensure on agreement to teach a 600-hour esthetics curriculum, most of which is unrelated to makeup artistry, and purchase corresponding esthetics equipment, which is also unrelated to makeup artistry.

121.    Under North Carolina's Cosmetic Art Act, before Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC can legally teach Plaintiff Goodall makeup artistry for pay, they must obtain a Board cosmetic-art-school license.

122.    North Carolina's regulations forbid Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC from teaching Plaintiff Goodall unless they agree to teach a 600-hour esthetics curriculum, most of which is unrelated to makeup artistry, and purchase corresponding esthetics equipment, which is also unrelated to makeup artistry.

123.    If Plaintiffs instead received money to talk about basket weaving, North Carolina's laws and regulations would not require that they obtain a license before speaking.

124.    Burdening Plaintiffs for communicating about makeup artistry, rather than other topics, is a content-based restriction on speech.

125.    Requiring makeup schools to obtain a license, conditioned on satisfying North Carolina's curriculum and equipment requirements for esthetics schools, is an unconstitutional burden on speech.

126.    North Carolina does not have sufficient justification for its burdens on Plaintiffs' communication about makeup artistry.

127.     Plaintiffs have no other adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

128.     Unless Defendants are enjoined, Plaintiffs will continue to suffer irreparable harm.

129.     Defendants' actions harm the public interest by depriving the public of additional and desired options in the marketplace, such as the option to attend the Dahlia Institute of Makeup Artistry.  Unless Defendants are enjoined, the public will continue to suffer this harm.

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request relief as follows:

A.     A declaratory judgment by the Court, pursuant to 28 U.S.C. § 2201, declaring that, facially and as applied to Plaintiffs, and others like them, the restrictions and enforcement preventing Plaintiffs Bukvic-Bhayani and Dahlia Institute of Makeup Artistry LLC from operating an unlicensed makeup school open to Plaintiff Goodall and other students violate the First and Fourteenth Amendment to the United States Constitution;

B.     A preliminary injunction prohibiting Defendants and their agents from requiring Plaintiffs Bukvic-Bhayani or Dahlia Institute of Makeup Artistry LLC to obtain a cosmetic-art-school license before operating a makeup school open to Plaintiff Goodall and other students;

C.     A permanent injunction prohibiting Defendants and their agents from requiring Plaintiffs Bukvic-Bhayani or Dahlia Institute of Makeup Artistry LLC to obtain a cosmetic-art-school license before operating a makeup school open to Plaintiff Goodall and other students;

22

D.     An award of attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

E.     Such further legal and equitable relief as the Court may deem just and proper.


DATED this 23rd day of August, 2017.


Respectfully submitted,

Milad Emam (Virginia Bar No. 83861)*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Telephone: (703) 682-9320
Fax: (703) 682-9321
Email: memam@ij.org

Justin Pearson (Florida Bar No. 597791)*
INSTITUTE FOR JUSTICE
2 South Biscayne Boulevard, Suite 3180
Miami, FL 33131
Telephone: (305) 721-1600
Fax: (305) 721-1601
E-mail: jpearson@ij.org

*Pro Hac Vice Application To Be Filed

Attorneys for Plaintiffs

/s/ David G. Guidry
David G. Guidry (N.C. State Bar No. 38675)
RABON LAW FIRM PLLC
225 E. Worthington Ave., Suite 100
Charlotte, NC 28203
Tel:  (704) 247-3247
Fax:  (704) 208-4645
Email: dguidry@usfraudattorneys.com

Local Counsel for Plaintiffs